**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x

FRANK J. MADULI, JR., individually and
on behalf of all others similarly situated,

                                  **Plaintiff,**

        vs.

KOTHA SEKHARAM, JUGAL K.
TANEJA, MIHIR K. TANEJA and
GEOPHARMA, INC.,

                                  **Defendants.**

----------------------------------------------------------x

CV

**CLASS ACTION**
**COMPLAINT FOR**
**VIOLATION OF THE**
**FEDERAL SECURITIES**
**LAWS**

**JURY TRIAL DEMANDED**

        Plaintiff, individually and on behalf of all other persons similarly situated, by and through his undersigned counsel, alleges the following upon personal knowledge as to those allegations concerning himself and, as to all other matters, upon the investigation of counsel.

## <u>NATURE OF THE ACTION</u>

        1.      This is a securities class action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b) and 78t(a), and the regulations promulgated thereunder by the SEC, including Rule 10b-5, 17 C.F.R. §240.10b-5. This action is brought on behalf of all purchasers of the securities of GeoPharma, Inc. ("GeoPharma" or the "Company") during the period July 13, 2004 to December 2, 2004, inclusive, and who were damaged thereby.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

4.     Venue is proper in this District pursuant to §27 of the Exchange Act, 28 U.S.C. §1391(b). Many of the acts and transactions giving rise to the violations of law complained of herein, including the preparation and dissemination to the investing public of false and misleading information, occurred in this District. In addition, GeoPharma maintains its principal executive offices in this Judicial District.

5.     In connection with the acts, conduct and other wrongs complained of herein, the defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, telephone communications and the facilities of national securities exchanges.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased GeoPharma stock at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant GeoPharma manufactures and distributes private label dietary supplements, over-the-counter (OTC) drugs, pharmaceuticals and health and beauty care

products for companies worldwide under two companies: Innovative Health Products, Inc. and Belcher Pharmaceuticals, Inc. Innovative Health Products specializes in the development and manufacture of nutritional supplements. Belcher Pharmaceuticals, Inc. is a Food and Drug Administration-registered drug development and manufacturing facility for generic and OTC drugs. On May 18, 2004, the Company changed its name from Innovative Companies, Inc. to GeoPharma, Inc.

8.      Defendant Kotha Sekharam ("Sekharam") is the Company's President and its principal spokesman.

9.      Defendant Jugal K. Taneja ("J. Taneja") is Chairman of the Board of Directors of GeoPharma. J. Taneja is also Chairman of Dynamic Health Products and DrugMax.

10.     Defendant Mihir K. Taneja ("M. Taneja") is the Company's Chief Executive Officer and also a director.

11.     Defendants Sekharam, J. Taneja and M. Taneja are collectively referred to as the "Individual Defendants."

12.     During the Class Period, Sekharam, as senior executive officer and director of GeoPharma was privy to non-public information concerning its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of his possession of such

-3-

information, Sekharam knew or recklessly disregarded the fact that adverse facts specified herein

had not been disclosed to, and were being misrepresented to the investing public.

## SUBSTANTIVE ALLEGATIONS

### The Class Period Begins

13.    On July 13, 2004, at 7:55 a.m. (before trading opened), the Company issued a

press release on the *PR Newswire* entitled, "GeoPharma Reports Success in Clinical Studies on

Oral Mucositis Drug for Cancer Patients." That press release stated, in relevant part:

> Belcher Pharmaceuticals, Inc, a wholly owned subsidiary of GeoPharma, Inc.
> (Nasdaq: GORX), has completed a double blind clinical study to evaluate the
> efficacy of their patent-pending drug for mucositis in cancer patients.
> Administration of their drug, MF5232, significantly improved the efficacy
> parameters with all ratings scales in the patients.
>
> Mucositis is the inflammation of the mucosa in the mouth. It occurs as a side
> effect of chemotherapy and radiation. According to the National Cancer Institute,
> oral mucositis occurs in almost all patients receiving radiation for head and neck
> malignancies, in more than 75 percent of bone marrow transplant recipients, and
> in nearly 40 percent of patients receiving chemotherapy. Patients with reduced
> immune response, such as HIV/AIDS may also face this condition. Currently, no
> effective treatment for mucositis is available. Approximately 400,000 patients
> in the United States experience mucositis and the market potential is estimated
> to be at $300 million to $500 million.
>
> ***"We are excited about the results of this study and we are exploring all the
> options available to move to the next phase of the development at a faster
> pace," stated Dr. Kotha Sekharam, Geopharma President and inventor of this
> drug. "In addition, since the drug is developed with natural ingredients, no
> side effects are expected."*** [emphasis added]

14.    GeoPharma's stock price rose 13% on the news and closed on July 13, 2004 at

$5.44.

-4-

15.    The large number of patients afflicted with cancer-related mucositis, and the

potential large market made it important for GeoPharma to be able to introduce a new patented

drug for use by such patients.  Such a drug would sell at high prices, and be available by

prescription only.

16.    The "drug" described in the press release dated July 13, 2004 as MF5232 was

later renamed by GeoPharma as "Mucotrol."

17.    On December 1, 2004, GeoPharma issued a press release on the *PR Newswire*

entitled, "GeoPharma, Inc. Receives FDA Approval for Mucotrol (TM); Manages Mucositis

Caused By Radiation and Chemotherapy Required in Cancer Treatment."  That press release

stated, in relevant part:

> LARGO, Fla., Dec. 1 /PRNewswire-FirstCall/ -- GeoPharma, Inc.
> (NASDAQ:GORX) today announced that Belcher Pharmaceuticals, Inc., a
> wholly-owned subsidiary of GeoPharma, Inc. has received approval from the
> United States Food and Drug Administration ("FDA") for Mucotrol(TM), a
> prescription product for the management of oral mucositis / stomatitis.
>
> Mucositis is a painful inflammation of the mucosa of the mouth that may occur
> due to radiation or chemotherapy.  Mucositis afflicts approximately 40% of
> patients receiving cancer chemotherapy and 75% percent of bone marrow
> transplant recipients as well as 100% of patients receiving radiotherapy for cancer
> of the head and neck.  It is estimated that approximately 300,000 cancer patients
> in the U.S. suffer from mucositis associated with cancer treatments.  Based on
> this, the estimated U.S. oncology market potential for Mucotrol(TM) sales are
> between $75 million and $300 million per annum and the estimated global
> market is between $250 million and $1 billion per annum.
>
> Belcher is planning to introduce Mucotrol (TM) directly to Oncologists.
> Simultaneously, Belcher has initiated discussions with potential strategic
> partners. "This patent pending formula is another example of our company's
> focus on niche areas and also of successful completing projects leading to

marketable products," says Dr. Kotha Sekharam, inventor and the President of GeoPharma, Inc.

18.    Based on this news, GeoPharma rose to $11.25, or 153%, in early trading on December 1, after the Company issued the press release.

19.    Inquiries by financial reporters immediately after the press release was issued soon revealed, however, several disturbing facts. "Mucotrol" is not a prescription drug and, in fact, is not a drug at all. The FDA classifies it as a "device," and thus it is far less attractive to market than a new drug to treat mucositis. The Company's apparent success in obtaining a new drug approval was also false. Devices, under FDA guidelines, do not require FDA approval or testing. Rather, they can be marketed so long as the FDA can confirm that they are substantially equivalent to other similar devices already being marketed. The GeoPharma press release also failed to include the additional comments from the FDA that the finding "does not mean that the FDA has made a determination of whether your device complies with other requirements of the [Food and Drug Administration Act]."

20.    When questioned by reporters why Mucotrol had been described as a drug, defendant Sekharam failed to give any explanation, though based on his training and experience he well knew the difference. Sekharam admitted under questioning that there was no active drug ingredient in Mucotrol.

21.    Based on these revelations, trading in GeoPharma stock immediately halted. Trading volume during the few hours following the false and misleading press release was 42

-6-

million shares. From a high of $11.25, the stock declined after adverse revelations filtered into the market, and the stock closed on $6.81 per share when trading was halted.

22.    On December 2, 2004, GeoPharma stated in a press release "that it could not estimate revenues from the distribution of the device," retreating from its earlier claims that Mucotrol could have potential sales of $75 million to $300 million per year in the United States and between $250 million and $1 billion per year globally. GeoPharma also recanted that Mucotrol was a drug, a claim first made in its July 13, 2004 press release, and never thereafter corrected.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of GeoPharma between July 13, 2004 and December 2, 2004 (the "Class"), subsequent to the dissemination by defendants of the materially false information as alleged herein, and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

24.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, GeoPharma's securities were actively publicly traded. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of

members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by GeoPharma or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

25.    Plaintiff's claims are typical of the claims of the members of the Class, because plaintiff and all of the Class members sustained damages arising out of defendants' wrongful conduct complained of herein.

26.    Plaintiff will fairly and adequately protect the interests of the Class members and have retained counsel who are experienced and competent in class and securities litigation. Plaintiff has no interests that are contrary to or in conflict with the members of the Class plaintiff seeks to represent.

27.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

28.    Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members, in that defendants have acted on grounds generally applicable to the entire Class. Among the questions of law and fact common to the Class are:

-8-

      a.      whether the federal securities laws were violated by defendants' acts as alleged herein;

      b.      whether the Company's publicly disseminated releases and statements during the Class Period omitted and/or misrepresented material facts and whether defendants breached any duty to convey material facts or to correct material facts previously disseminated;

      c.      whether defendants participated in and pursued the fraudulent scheme or course of business complained of;

      d.      whether the defendants acted willfully, with knowledge or recklessly, in omitting and/or misrepresenting material facts;

      e.      whether the market prices of GeoPharma common stock during the Class Period were artificially inflated due to the material nondisclosures and/or misrepresentations complained of herein; and

      f.      whether the members of the Class have sustained damages and, if so, what is the appropriate measure of damages.

## STATUTORY SAFE HARBOR

29.      The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Further, none of the statements pleaded herein which were forward-looking statements were identified as "forward-looking statements" when made. Nor was it stated that actual results "could differ materially from those projected." Nor were the forward-looking statements pleaded accompanied by meaningful cautionary statements identifying important

factors that could cause actual results to differ materially from the statements made therein. Defendants are liable for the forward-looking statements pleaded because, at the time each of those forward-looking statements was made, the speaker knew the forward-looking statement was false and the forward-looking statement was authorized and/or approved by an executive officer of GeoPharma who knew that those statements were false when made.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

30.    At all relevant times, the market for GeoPharma common stock was an efficient market for the following reasons, among others:

a.    GeoPharma common stock met the requirements for listing, and was listed and actively traded, on the NASDAQ, a highly efficient market;

b.    As a regulated issuer, GeoPharma filed periodic public reports with the SEC and the NASD;

c.    GeoPharma stock was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace; and

d.    GeoPharma regularly issued press releases which were carried by national newswires. Each of these releases was publicly available and entered the public marketplace.

31.    As a result, the market for GeoPharma securities promptly digested current information with respect to GeoPharma from all publicly-available sources and reflected such

-10-

information in GeoPharma's stock price. Under these circumstances, all purchasers of GeoPharma common stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices and a presumption of reliance applies.

## COUNT I

### For Violations Of Section 10(b) Of The 1934 Act And Rule 10b-5 Promulgated Thereunder Against All Defendants

32.    Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein. This claim is asserted against all defendants.

33.    During the Class Period, GeoPharma, Sekharam, J. Taneja and M. Taneja, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of GeoPharma common stock; and (iii) cause plaintiff and other members of the Class to purchase GeoPharma stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants GeoPharma and the Individual Defendants, and each of them, took the actions set forth herein.

34.    These defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for GeoPharma common stock in violation of Section

-11-

10(b) of the Exchange Act and Rule 10b-5. These defendants are sued as primary participants in the wrongful and illegal conduct charged herein. These defendants are also sued herein as controlling persons of GeoPharma, as alleged below.

35.    In addition to the duties of full disclosure imposed on defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they each had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. § 210.01 et seq.) and S-K (17 C.F.R. § 229.10 et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete and accurate information.

36.    GeoPharma, Sekharam, J. Taneja and M. Taneja, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of GeoPharma as specified herein. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of GeoPharma's value and performance and substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state

-12-

material facts necessary in order to make the statements made about GeoPharma and its business, operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of GeoPharma securities during the Class Period.

37.    Sekharam's, J. Taneja's and M. Taneja's primary liability, and controlling person liability, arises from the following facts: (i) Sekharam, J. Taneja and M. Taneja were all high-level executives and/or director at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) these defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

38.    These defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or

-13-

recklessly and for the purpose and effect of concealing GeoPharma's operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its stock. As demonstrated by their overstatements and mis-statements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

39.    Defendants were motivated to artificially inflate GeoPharma's stock price because the Company had entered into financing arrangements on February 11, 2004 and April 2, 2004 that provided the Company with certain conversion rights that benefitted GeoPharma if its stock price increased. *See* February 11, 2004 press release ("Innovative Companies, Inc. Announces $10 Million Debt & Equity Financing Agreements with Lazarus Funds) and Form S-3 (filed April 2, 2004) (registering 4,820,833 shares of common stock in connection with the debt and equity financing announced on February 11, 2004).

40.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of GeoPharma's common stock was artificially inflated during the Class Period. In ignorance of the fact that the market price of GeoPharma's shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by

defendants during the Class Period, plaintiff and the other members of the Class acquired GeoPharma common stock during the Class Period at artificially inflated high prices and were damaged thereby.

41.    At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of GeoPharma, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their GeoPharma securities during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

42.    By virtue of the foregoing, GeoPharma, Sekharam, J. Taneja and M. Taneja each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

43.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### For Violations Of Section 20(a) Of The
### 1934 Act Against Individual Defendants

44.    Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein. This claim is asserted against Sekharam, J. Taneja and M. Taneja.

45.    Sekharam, J. Taneja and M. Taneja were and acted as controlling persons of GeoPharma within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, Sekharam, J. Taneja and M. Taneja had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. Sekharam, J. Taneja and M. Taneja were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.    In addition, Sekharam, J. Taneja and M. Taneja had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

47.    As set forth above, GeoPharma, Sekharam, J. Taneja and M. Taneja each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their controlling positions, Sekharam, J. Taneja and M. Taneja are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

-16-

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on his own behalf and on behalf of the Class, prays for judgment as follows:

(i)       Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

(ii)      Awarding plaintiff and the other members of the Class damages in an amount which may be proven at trial, together with interest thereon;

(iii) Awarding plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

(iv)      Such other relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: January 31, 2005

PASKOWITZ & ASSOCIATES

By: _____
Laurence D. Paskowitz (LDP/7324)
60 East 42nd Street, 46th Floor
New York, NY 10165
Tel:    212-685-0969
Fax:    212-685-2306

VIANALE & VIANALE LLP
Kenneth J. Vianale
Julie Prag Vianale
(Members of the Bar of this Court)
5355 Town Center Road, Suite 801
Boca Raton, FL  33486
Tel: (561) 391-4900

-17-

Fax: (561) 368-9274

**SHALOV STONE &**
 **BONNER LLP**
Lee S. Shalov
485 Seventh Avenue, Suite 1000
New York, NY 10018
Tel:    212-239-4340
Fax:    212-239-4310

**LAW OFFICES OF BRUCE**
 **G. MURPHY**
Bruce G. Murphy
265 Llwyds Lane
Vero Beach, FL 32963
Tel:    772-231-4202

**Attorneys for Plaintiff**

**Of Counsel:**

**ROY JACOBS & ASSOCIATES**
60 East 42nd Street 46th Floor
New York, NY 10165
212-856-1156

12/16/04  10:55am  P. 002

FROM : FRANKIE                    FAX NO. : 15167818007            Dec. 16 2004 10:41AM P1

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, ___Frank J. Maduli jr___ , ("Plaintiff") declare the following claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint and authorized its filing. Plaintiff retains the Law Offices of Bruce G. Murphy, P.C. and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.    Plaintiff did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 100 | GORX | Buy | 12/1/04 | 11.00 |
| 100 | GORX | Sell | 12/06/04 | 5.5100 |
| | | | | |
| | | | | |

Please list other transactions on a separate sheet of paper, if necessary.

5.    During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below: _____

6.   The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _16_ day of _December_, 2004.

___Frank Maduli jr___                         ___Frank J. Maduli jr___
**Signature**                                  **Print Name**